IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARONTA TYRONE LEWIS, | No.  2:25-CV-1999-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| GONZALEZ, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's original complaint.  See ECF No. 1.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as Defendants: (1) Ms. Gonzalez, correctional officer at Kern Valley State Prison (KVSP); (2) Christian Peiffer, warden at KVSP; (3) J. Castro, ADA-coordinator at KVSP; (4) Watree, facility captain at KVSP; (5) Hernandez, lieutenant at KVSP; (6) Hernandez, sergeant at KVSP; (7) California Department of Corrections and Rehabilitation (CDCR); (8) Connie Gipson, director of CDCR; (9) Gavin Newsom, governor of the State of California; (10) Chamberlin, Chief Deputy Warden at KVSP; and (11) Does 1-4. See ECF No. 1, pgs. 13-16.

///

1

Plaintiff alleges 14 causes of action: (1) general negligence; (2) intentional torts; (3) violation of the Bane Act; (4) violation of Civil Rights Act of 1976; (5) violation pursuant to 42 U.S.C. § 1983; (6) violation under the First Amendment of the California Constitution and the First Amendment of the U.S. Constitution; (7) unconstitutional custom, practice, or policy pursuant to 42 U.S.C. § 1983 and 1981; (8) trespass; (9) battery; (10) assault; (11) negligence, breach of legal duty; (12) violation of Title II of the Americans with Disabilities Act and the Rehabilitation Act; (13) violation of the Eight and the Fourteenth Amendments; and (14) violation pursuant to Civil Code § 52.1 and California Government Code § 845.6.

In Plaintiff's first claim, Plaintiff contends that on September 14, 2022, Plaintiff was attending a mental committee team hearing known as IDTT. See id. at 18. Plaintiff states that the IDTT is for mental health patients. See id. Plaintiff claims that upon leaving the building, Defendant Gonzalez was disrespectful toward Plaintiff, trying to provoke him. See id. Plaintiff states that he was directly addressed by Defendant who said, "shut the fuck up, you talk too much, get the fuck out." Id. Plaintiff claims that statement was made by Defendant in front of her co-worker, another correctional officer. See id. Plaintiff asserts that he felt embarrassed, threatened, belittled, and disrespected. See id. Plaintiff states that he responded by saying, "shut up, bitch, don't you see I am trying to open the door so I can leave." See id. at 20. Plaintiff claims that Defendant violently grabbed the handles of Plaintiff's wheelchair and began pulling and pushing the wheelchair against the door's frame. See id. Plaintiff claims that his feet got caught under the wheelchair. See id. Plaintiff states that he responded by saying, "stop, bitch, I can wheel myself outside, you got my feet caught under the chair, you are hurting me! Stop pushing, bitch!" Id.

Plaintiff claims that he asked Defendant's partner for help. See id. Plaintiff asserts that Defendant Gonzalez injured Plaintiff, and Plaintiff had to seek medical assistance. See id. Plaintiff states that he was issued pain medication and physical injuries were documented. See id. Plaintiff claims that he pursued a grievance procedure and then pursued the claim through the victim compensation board claims divisions program. See id. However, Plaintiff states that he did not succeed. See id. Plaintiff claims that he was transferred to another institution where he sought

2

mental health care and treatment. See id. Plaintiff claims that he suffered injuries and emotional distress because of Defendant Gonzalez's conduct. See id. As a result of this incident, Plaintiff asserts that he suffered loss of appetite, nightmares, and stress related to fear. See id. Plaintiff claims that he has concentration issues and trouble talking about this incident with staff members/mental health therapists. See id. Plaintiff also claims possible broken or fractured bones in his ankles. See id.

In Plaintiff's second claim, Plaintiff alleges an intentional tort arising from the same incident that occurred on September 14, 2022. See id. at 22. Plaintiff asserts that he is confined to a wheelchair and classified as a mobility-impaired person solely due to the physical abuses suffered as a result of acts committed by CDCR correctional officers. See id. Plaintiff also claims that he is a mental health patient and is being treated for several disorders, inflamed by abuses by CDCR staff. See id. Plaintiff maintains that he is a protected Armstrong class member and also Coleman protected class member for mental disabilities and impairments. See id. Plaintiff states that according to the Coleman class injunction, CDCR mental health service correctional officers are required to have advanced training and knowledge of de-escalation techniques. See id.

Plaintiff also asserts that he is a protected class Armstrong patient/inmate to which CDCR correctional officers are given advanced notice and advanced training on how to professionally handle mobility-impaired patients. See id. Plaintiff alleges that during the events of that day he did not threaten anyone. See id. Plaintiff claims that he was trying to leave when Defendant Gonzalez addressed him in a hostile manner, using derogatory language. See id. at 23. Plaintiff states that Defendant Gonzalez's acts caused him to fear for his life, health and safety, they also caused him emotional distress. See id. Plaintiff claims that Defendant Gonzalez began pulling his wheelchair without his consent. See id. Plaintiff asserts he repeated the same story to special agent from the Office of Internal Affairs, Camron Scott. See id. Plaintiff contends that the agent was able to also watch Officer Gonzalez's body cam footage and hear the audio from this incident. See id.

///

3

Plaintiff claims that another correctional officer, Gonzalez's partner, did not interfere, but opened the door for Officer Gonzalez so Defendant could push the wheelchair out. See id. at 24. Plaintiff asserts that this act injured his ankles because his feet got caught under the wheelchair. See id. Plaintiff affirms that Defendant Gonzalez failed to summon medical help or call the sergeant on duty. See id. Plaintiff claims that defendant did not file an incident report to conceal this act of assault and battery. See id. Plaintiff maintains that he filed CDCR-7362 medical injury claim by unreasonable force. See id.

In Plaintiff's third claim, Plaintiff alleges that Defendants committed a violation of the Bane Act and that violation arose from the same incident. See id. at 25. Plaintiff claims that Defendant Gonzalez violated Plaintiff's right to freedom of speech. See id. Plaintiff asserts that Defendant became physically violent with Plaintiff. See id. Plaintiff claims that there is an established history of employees' violent conduct against black people at KVSP. See id. Plaintiff asserts that DOES 1-4 named in the complaint failed and refused to intervene or prevent Defendant's use of customary battery and violence. See id. Plaintiff contends that by failing to act, DOES 1-4 ratified this wrongful conduct. See id.

In Plaintiff's fourth claim, Plaintiff alleges the violation of Civil Rights Act of 1976 that arose from the same incident. See id. at 26.

In Plaintiff's fifth claim, Plaintiff alleges violation pursuant to 42 U.S.C. § 1983. See id. at 27. Plaintiff claims that unreasonable force was used against him to create intimidation and fear. See id. Plaintiff asserts that the force was not used in good faith but to oppress Plaintiff's right to freedom of speech and to cause physical harm. See id. Plaintiff states that DOES 1-4 ratified this conduct and refused to intervene or try to prevent Defendant's customary use of force or oppressive intimidations. See id. Plaintiff asserts that all Defendants named in the complaint condoned Defendant Gonzalez's wrongful conduct. See id.

In Plaintiff's sixth claim, Plaintiff alleges that he engaged in protected conduct under the First Amendment of the California Constitution and the First Amendment of the U.S. Constitution. See id. at 28. Plaintiff asserts that on September 14, 2022, Defendant Gonzalez told him to put his state issued electronic tablet away. See id. Plaintiff states that he performed the

4

requested action; however, Plaintiff tried to explain to Defendant that there was no new policy requiring Plaintiff to keep his tablet away. See id. Plaintiff claims that Defendant Gonzalez got angry and frustrated when Plaintiff began explaining his rights to have his tablet out when on a wheelchair. See id. Plaintiff claims that he told Defendant he would file a grievance against her. See id. Plaintiff states that Defendant told him to "shut up and watch" if he did not put the tablet away. See id. Plaintiff claims that Defendant's partner shut the door and closed Plaintiff out. See id. Plaintiff asserts that Defendant's conduct seemed to imply future threat and that he feared to exercise his right to freedom of speech. See id. Plaintiff claims he suffered emotional distress that caused him to urinate and defecate in his own clothes. See id.

In Plaintiff's seventh claim, Plaintiff alleges unconstitutional custom, practice, or policy pursuant to 42 U.S.C. § 1983 and § 1981. See id. at 29. Plaintiff claims that Defendants committed daily routine practices of pushing and rushing Plaintiff out of mental health EOP building when he tried to voice over his concerns. See id. Plaintiff claims that Defendant Gonzalez customarily committed battery against Plaintiff and threatened him to "shut up" or else Plaintiff would not be allowed to attend his EOP group meetings. See id. Plaintiff asserts that DOES 1-4, and each defendant failed or refused to intervene and prevent Defendant Gonzalez's use of oppressive intimidations when they witnessed this conduct against Plaintiff. See id. Plaintiff claims that DOES 1-4 and each Defendant ratified this unconstitutional custom and practice. See id.

In Plaintiff 's eight claim, Plaintiff alleges trespass to his person that arose from the same incident. See id. at 31.

In Plaintiff's ninth claim, Plaintiff alleges battery that arose from the same incident. See id.

In Plaintiff's tenth claim, Plaintiff alleges assault that arose from the same incident. See id. at 32.

In Plaintiff's eleventh claim, Plaintiff alleges negligence and the breach of duty that arose from the same incident. See id.

/ / /

5

In Plaintiff's twelve claim, Plaintiff alleges violation of Title II of the Americans with Disabilities Act and the Rehabilitation Act. See id. at 34. Plaintiff claims that he was a qualified individual with medical/physical impairment. See id. Plaintiff stresses that he had limited ability to be independent and care for himself, and due to correctional officer's brutality, Plaintiff was unable to control his mental and physical conditions. See id. Plaintiff maintains that he met the essential eligibility requirements to provide access to health and safety conditions and medical services and protections to prevent risk of harm while confined in custody in California. See id. Plaintiff claims that the State violated the ADA and deprived Plaintiff of his Federal and State protected rights by two practices: not being able to provide safe custody and care to disabled dependents/patients/inmates in need due to lack of adequate/sufficient staff; failing to provide adequate/sufficient training on handling wheelchair bound mobility-impaired patients. See id. at 35. Plaintiff asserts that he was denied the benefits of services, programs, and activities of the State, mental care and treatment, and he was denied safe conditions while in confinement. See id. at 36.

In Plaintiff's thirteenth claim, Plaintiff alleges violation of his Eight and Fourteenth Amendment rights. See id. at 37. Plaintiff states that Defendants refused to properly safeguard a dependent person's health and safety. See id. Plaintiff alleges that Defendants maintained policies, customs, or practices which fell far below any acceptable standard of safety, and care, including but not limited to: (1) failure to provide access to preventative measures, aids, devices, equipment, and monitoring of inmates' continued safety in situation described herein (2) failure to provide immediate medical emergency response in situation complained of herein without delay, or without retaliatory speech and accusations (3) failure to provide incident reports as incidents occur without perjured or false statements by officers involved while acting under the state authority (4) failure to properly handle, hold, touch, render care to injured Plaintiff immediately after declared medical emergency (5) failure to provide medical assistance pending medical response (6) failure to summon medical staff after on scene injury of Plaintiff caused by custody personnel. See id. at 38.

///

6

In Plaintiff's fourteenth claim, Plaintiff alleges violation pursuant to Civil Code § 52.1 that arose out the same incident. See id. at 39.  Plaintiff claims that Defendants, acting within the course and scope of their employment, retaliated against Plaintiff by treating him differently than other inmates, similarly situated. See id. Plaintiff asserts Defendants' acts were due to Plaintiff's race and disability. See id. Plaintiff also states that Defendants retaliated against him for exercising his right to file a complaint or grievance. See id.

Plaintiff also claims violation pursuant to California Government Code § 845.6 against all Defendants that arose out of the same incident. See id. at 40. Plaintiff claims that Defendants knew or should have known that Plaintiff was in need of medical help, and they failed or refused to provide that help. See id.

## II.  DISCUSSION

While the Court finds that Plaintiff's complaint appears to state cognizable claims against Defendant Gonzalez under the Eighth Amendment for excessive force, under the ADA relating to accommodations, and under the First Amendment for retaliation, the Court otherwise finds that the complaint suffers from a number of defects.  First, as to all defendants other than Gonzalez, some of whom hold supervisory roles, Plaintiff fails to allege facts sufficient to establish a causal connection to a violation of Plaintiff's constitutional or statutory rights. Second, as to Defendant CDCR, this defendant is immune from suit under the Eleventh Amendment.  Third, as to Plaintiff's state law claims, Plaintiff has not alleged compliance with California Tort Claims Act.  Finally, as to all claims and defendants, venue is improper. Specifically, Plaintiff claims the events at issue occurred at KVSP, which is located in Kern County within the boundaries of the Fresno Division of the Eastern District of California.

The Court will herein address the deficiencies identified above, provide Plaintiff an opportunity to amend, and transfer this matter to the Fresno Division where Plaintiff should file his amended complaint.

///

///

A.      **Causal Link**

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations.  See id. Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may be liable even where such personnel do not overtly participate in the offensive act.  See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).  A supervisory defendant may also be liable where he or she knew of constitutional violations but failed to act to prevent them.  See Taylor, 880 F.2d at 1045; see also Starr v. Baca, 633 F.3d 1191, 1209 (9th Cir. 2011).  When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

/ / /

/ / /

/ / /

8

Here, Plaintiff's allegations center on the conduct of Defendant Gonzalez.  As to the other named defendants, some of whom are supervisory personnel such as the prison warden, Plaintiff fails to allege facts specific to each individual to show a causal connection to a claimed constitutional or statutory violation.  Plaintiff will be provided leave to amend upon transfer of this matter to the Fresno Division.

### B.    Eleventh Amendment Immunity

The Eleventh Amendment prohibits federal courts from hearing suits brought against a state both by its own citizens, as well as by citizens of other states.  See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).  This prohibition extends to suits against states themselves, and to suits against state agencies.  See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).   A state's agency responsible for incarceration and correction of prisoners is a state agency for purposes of the Eleventh Amendment.  See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en banc).

Here, Plaintiff names as a defendant California's agency for incarceration and correction, CDCR, which is immune from suit.  This defect is not subject to cure through amendment.

### C.    State Law Claims

Plaintiff has failed to state claims based on state law because Plaintiff has not alleged compliance with the Government Claims Act, which is required to plead such claims.  See State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240, 1237 (2004) (for claims against the State, timely presentation of a claim under the Government Claims Act is an element of the cause of action and must be pled in the complaint); see also Cal. Gov't Code § 900.6 (defining "State" as "the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller").

Here, Plaintiff asserts a violation of California law, but plaintiff fails to plead compliance with the California Tort Claims Act.  Plaintiff is informed that before he may proceed on a claim arising under California law in this court he must comply with the terms of the

California Tort Claims Act, and then plead compliance.  See Cal. Gov't Code § 910 et seq.; Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d. 1470, 1477 (9th Cir. 1995).  Complaints must present facts demonstrating compliance, rather than simply conclusions suggesting as much. Shirk v. Vista Unified School Dist., 42 Cal.4th 201, 209 (2007).  Plaintiff will be provided an opportunity to do so in any amended complaint filed in this action upon transfer to the Fresno Division.

### D.    Venue

The alleged civil rights violations took place at KVSP in Kern County, which is within the boundaries of the Fresno Division of the United States District Court for the Eastern District of California.  See Local Rule 120(b).  Pursuant to Local Rule 120(d), a civil action which has not been commenced in the proper division of the Court may, on the Court's own motion, be transferred to the proper division.  Because the Sacramento division of this Court is not the proper division, this action will be transferred to the Fresno Division.

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

10

Accordingly, IT IS HEREBY ORDERED as follows:

1.      This action is transferred to the United States District Court for the Eastern District of California sitting in Fresno.

2.      Plaintiff may file a first amended complaint within 60 days of the date of service of this order.

Dated:  March 17, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

11